[Hobbs v. The State.]·

# Hobbs v. The State.

*Indictment for Grand Larceny.*

1. *Argument of counsel.*—Under the rule laid down in the case of *Cross v. The State* (68 Ala. 476), as to unauthorized statements by counsel in their argument to the jury, which would be available on error,

[Hobbs v. The State.]

"the statement must be made as of fact, and the fact stated must be unsupported by any evidence." But the court, in laying down this rule, did not intend "to shackle discussion, nor to scrutinize narrowly and strictly inferences counsel may draw from proven facts;" and the rule does not apply to a statement made as an inference from the testimony, which falls within the legitimate line of argument.

FROM the Circuit Court of Limestone.

Tried before the Hon. H. C. SPEAKE.

The indictment in this case charged the defendant, Scott Hobbs, with the larceny of a cow, the property of James Wilson. On the trial, as the bill of exceptions shows, issue being joined on the plea of not guilty, said Wilson testified that he lost his cow in April, 1882, and recovered her about two weeks afterwards; that the cow was unmarked when lost, and was freshly marked when recovered, a bit being cut out of the under side of the ear. Jim Mitchell, a freedman, a witness for the prosecution, testified that he knew the cow, and further stated: "I saw her on a Sunday in April, 1882, in Emma Frasier's lot; she was in a few feet of the road, just over the fence, in the lot, and had a rope, about four feet long, around her neck. It was about one hundred and fifty yards down the lane, to where the cow was in the lot, from the defendant's house. The next time I saw the cow was on the following Monday morning, in Julia Richardson's field, about twenty or thirty steps from where I saw her the day before, just across the fence that separated the lot from the field; she was tied in the corner of the fence, where she was eating. The field is on the side of the road, or lane, and the defendant's house on the opposite side. Defendant was present when I saw the cow on Monday, and, when asked about the cow, claimed her, saying that a man from Tennessee had left her with his wife, and told her, if neither he nor any one called for her, she or her husband could have the cow; and that he was not at home when the cow was left there. I told defendant that the cow belonged to Mr. Wilson, and that he had better give her up, or he would get into trouble about her; after which, he made no objections to giving up the cow to Mr. Willie Wilson, who was with me, and who drove the cow home. The defendant had no inclosure, or lot, except his yard which was fenced in with palings." Willie Wilson, who was a son of the prosecutor, testified substantially to the same facts as to the defendant's declarations and surrender of the cow. The defendant introduced several witnesses, who testified as to his good character. "This was all the evidence. The solicitor, in his closing speech, said: ' *The defendant marked the cow, and hid her out.*' The defendant's counsel here reminded the solicitor that no such fact was in evidence before the jury; whereupon, continuing his

[Hobbs v. The State.]

argument, the solicitor said : '*Gentlemen of the jury, I say the defendant did put the cow in his aunt's lot, and marked her, and then hid her out; and you know it. Instead of putting this nice present to his wife or himself in his yard, which was fenced in, he tied her in the corner of the fence two hundred yards from his house, and marked her.*' The defendant objected to these remarks of the solicitor—that he put the cow in his aunt's lot, and marked her, and tied her out—on the ground that no evidence of such facts was before the jury; but the court overruled the objection, and the defendant excepted. The solicitor then continued his argument, on the assumption that the cow was hid out; to which argument the defendant objected," and duly excepted to the overruling of his objection. This ruling is the only matter here urged as error.

B. M. SOWELL, and W. R. FRANCIS, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

STONE, J.—We had hoped that, in *Cross v. The State*, 68 Ala. 476, we expressed ourselves so clearly, as not to be misunderstood. Speaking of statements of counsel which would be available on error, we then said : " The statement must be made *as of fact;* [and] the fact stated must be unsupported by any evidence." The language objected to in this case was manifestly uttered as an inference, and that inference we can not say was unsupported by any testimony. On the contrary, we think the inference drawn from the testimony was very reasonable and natural. We have no wish to shackle discussion, or to scrutinize, narrowly and critically, inferences counsel may draw from proven facts. Trial courts would be treading on dangerous ground, were they to exercise a severe censorship over the line of argument counsel may pursue. They must not allow them to constitute themselves unsworn witnesses, and to state, *as facts*, matters of which there is no testimony. But we have gone no further. On the contrary, we expressly said, in *Cross'* case, that " every inference counsel may think arises out of the testimony," is a legitimate subject of criticism and discussion. See *Motes v. Bates*, at the present term.

There is no error in the record, and the judgment of the Circuit Court must be affirmed.